IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LENICA HIGHTOWER,

    Plaintiff,

v.                                       Civil Action No. 2:04-cv-00684

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

    Plaintiff, Lenica Hightower (hereinafter referred to as "Claimant"), filed an application for SSI in April, 2002, alleging

disability as of March 16, 2001, due to left leg and knee, back and hip problems. (Tr. at 55-7, 68.) The claim was denied initially and upon reconsideration. (Tr. at 38-40, 44-46.) On December 6, 2002, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 47.) Hearings were held on September 19, 2003 and January 7, 2004 before the Honorable Arthur J. Conover. (Tr. at 326-58; 313-25.) By decision dated January 26, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-24.) The ALJ's decision became the final decision of the Commissioner on April 29, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) On July 6, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2002). If an individual is found "not disabled" at any

step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v.

Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15-6, Finding No. 1, tr. at 22.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of sprains/strains involving her back, as well as left leg and knee problems. (Tr. at 16, Finding No. 2, tr. at 23.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 3, tr. at 23.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 20, Finding No. 5, tr. at 23.) Claimant had no past relevant work to which she could return. (Tr. at 21, Finding No. 6, tr. at 23.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as a kitchen helper, laundry worker, or janitor, which exist in significant numbers in the national economy. (Tr. at 21-2, Finding No. 10, tr. at 23.) On this basis, benefits were denied. (Tr. at 22-3, Finding No. 11, tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 34 years old at the time of the administrative hearing. (Tr. at 331.) She has a high school education and no experience that qualifies as past relevant work. (Tr. at 74, 15.) In the past, however, Claimant worked as a housekeeper, a caterer, an assembly line worker, a janitor, an advertisement inserter, and a home health aid. (Tr. at 81.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

*A.  Physical Impairments*

Claimant injured her back and abdominal muscles on March 16, 2001 while lifting a client.  She was evaluated at Saint Francis Hospital, where physicians noted a normal neck exam, but decreased range of motion and tenderness in her back.  Examiners diagnosed acute dorsal and lumbar strain, and prescribed medications.  They advised Claimant that she could return to work the following day, but should not lift more than thirty (30) pounds. (Tr. at 109-113.)

Claimant underwent an MRI of her lumbar spine in May 2001 due to her complaints of low back pain radiating into her legs.  No significant abnormalities were identified.  (Tr. at 230.)  Claimant also underwent an MRI of her left knee in June 2001, which showed no acute or focal abnormalities.  (Tr. at 219.)

Claimant treated conservatively with Larry Casto, D.C. from March, 2001 through November, 2001.  (Tr. at 160-203.) Dr. Casto referred Claimant to the Day Surgery Pain Management Center, where she was evaluated on November 28, 2001. (Tr. at 114.)

Notes from that visit reflect that Claimant had the following ranges of motion in her torso: 50 degrees forward flexion, -20 degrees of extension, and 35 degrees of lateral bending right and left, with complaints of pain when bending to the left.  The

6

examiner, J.K. Lilly, III, M.D., M.S.M., noted that Claimant's complaints of pain were inconsistent when testing was done in a sitting versus standing position. (Tr. at 115.) Her straight leg raising complaints were inconsistent upon distraction. Her complaints of pain likewise did not correlate with dermatomal testing. Dr. Lilly remarked that Claimant significantly amplified her low back presentations, especially non-anatomical sensory presentations, and that "guarding and bracing and unusual grimacing and sighing were also present." Dr. Lilly concluded that "[o]verall, this is a confounding evaluation with multiple nonphysiologic findings suggestive of symptom amplification or somatoform pain disorder." He recommended that aggressive therapy be discontinued and that vocational rehabilitation be explored. (Tr. at 116.)

    On January 18, 2002, Claimant underwent a functional capacity evaluation at the request of her chiropractor, Larry Casto, D.C. (Tr. at 119-24.) Exercise physiologist Maureen Miller, MS, ATC indicated that Claimant functioned at the sedentary physical demand level. She also remarked, however, that the validity criteria indicated that Claimant was attempting to control the test results, yielding an invalid profile with a very poor effort factor, and demonstrating symptom magnification. (Tr. at 119, 122.) Ms. Miller found that Claimant was a poor candidate for success in active physical rehabilitation such as work hardening or conditioning.

(Tr. at 119-22.)

Marsha Lee Bailey, M.D., MPH, FACOEM, examined Claimant at the request of the Worker's Compensation Division on January 22, 2002. (Tr. at 125-41.) Claimant described constant pain in her left shoulder, radiating into her buttocks, left hip, leg and ankle. (Tr. at 125.) She took no medications except Depakote for a seizure disorder, an albuterol inhaler for chronic bronchitis, and an occasional Darvocet and Flexeril as prescribed for an unrelated injury. (Tr. at 126.) She ambulated easily into the exam room and was able to sit throughout the exam without acute distress. She "jumped with extreme pain behavior" on even light palpation of her thoracic or lumbar region. (Tr. at 128.) She had 50 degrees of lumbar flexion and 10 degrees of lumbar extension; 15 degrees of right lateral flexion, and 20 degrees of left lateral flexion. Her strength was symmetrical in her lower extremities at 5/5. Her seated straight leg raising test was 85 degrees on the right and 80 degrees on the left. When supine, her results were 40 degrees on the right and 45 degrees on the left. (Tr. at 128.) Dr. Bailey concluded that Claimant suffered a lumbar, thoracic and left knee strain, and that she had chronic thoracic and lumbar pain with symptom magnification. She also opined that Claimant's lower extremity symptoms were a direct result of referred lower back pain, as opposed to a true knee joint injury. Claimant was able to return to work immediately in at least a sedentary capacity. (Tr.

at 129.)

Notes from Concentra Managed Care Services, Inc. dated June 11, 2002 reflect that Claimant was placed under a rehabilitation plan for job search employment on January 30, 2002. However, the case was closed in June of 2002 due to Claimant's noncompliance. (Tr. at 248.)

A state agency medical source completed a Physical Residual Functional Capacity Assessment form on June 11, 2002. (Tr. at 256-63.) He opined that Claimant could occasionally lift 50 pounds, frequently lift 25 pounds, stand, walk or sit for about 6 hours in a normal 8-hour workday, and could push or pull without limitation. (Tr. at 257.) Claimant had no postural, manipulative, visual, communicative or environmental restrictions. (Tr. at 258-60.) The examiner commented that he, too, believed Claimant was exaggerating her symptoms, and that he saw no reason why she could not perform some "medium" level activities. (Tr. at 261.)

Nilima Bhirud, M.D. examined Claimant on October 22, 2003. (Tr. at 295-8.) Claimant told Dr. Bhirud that she had chemical imbalance, backache, chest pain, and shortness of breath, and that she had been molested when she was nine years old. She complained of feeling depressed and nervous, and stated that she could not sleep. (Tr. at 295.)

Upon examination, Claimant could pick up a coin from the floor, stand on each foot independently, and properly heel walk,

toe walk, and squat. She had a normal gait. (Tr. at 296.) Her straight leg raising test was negative on both sides, and her knee range of motion was normal. (Tr. at 297.)

Dr. Bhirud also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). She opined that Claimant had no exertional limitations, postural limitations, manipulative limitations, communicative or visual limitations, and no environmental limitations. (Tr. at 299-301.)

### B. *Mental Impairments*

Claimant was treated at Charleston Area Medical Center for a bipolar disorder in February 2001, June 2001, and March 2002. She was prescribed Depakote. (Tr. at 150-59.)

State agency psychologist Robert Solomon, Ed.D. completed a Psychiatric Review Technique form on September 21, 2002. (Tr. at 278-91.) He opined that Claimant had no severe mental impairment. (Tr. at 278.) She had no restriction in her activities of daily living, no difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence and pace, and no repeated episodes of decompensation of extended duration. (Tr. at 288.) Dr. Solomon noted that Claimant's activities of daily living were within normal limits, including the fact that she groomed, cooked, read, visited, watched television, shopped, and cleaned. (Tr. at 290.)

Claimant underwent a Psychological Evaluation by Lisa Tate,

10

M.A. on October 29, 2003. (Tr. at 304-9.) She noted that Claimant walked with a normal gait and maintained normal posture, having good use of all limbs. (Tr. at 304.) Claimant reported suffering depression since the age of nine, due to being molested. She stated that her symptoms included depressed mood, shakiness, sleep difficulty, exaggerated startle response, problems with concentration, racing thoughts, and anxiety. She was not in mental health treatment for these problems. (Tr. at 305.)

Claimant relayed that her current medical problems included back pain, left shoulder pain, left leg pain, left knee pain, acid reflux, pain on the left side, chest pain, and fibroid tumors. (Tr. at 305.)

Mental status examination revealed that Claimant had logical and coherent thought processes, as well as fair insight, and that her judgment and immediate memory within normal limits. She had moderately deficient recent memory and concentration. (Tr. at 307.) Her activities of daily living included fixing simple food, washing dishes, and grooming. Claimant reported that she washed dishes two to three times a week, read, cleaned house with assistance three times a week, and spent time with a friend three times a week. She attended church twice a month, visited her father three times a month, and dined out two to three times a month. She enjoyed crocheting twice a week. (Tr. at 308.)

Ms. Tate diagnosed depressive disorder NOS with anxious

11

features, and panic disorder with agoraphobia. She found that Claimant's social functioning was within normal limits, as were her persistence and pace. (Tr. at 308.)

Ms. Tate also completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (Tr. at 310-12.) She determined that Claimant had a good ability to follow work rules, use judgment, and function independently. She had a fair ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, and maintain attention/concentration. (Tr. at 310.) She had a poor ability to understand, remember and carry out complex job instructions, as well as detailed instructions. She had a fair ability to understand, remember and carry out simple job instructions. She had a good ability to maintain personal appearance and demonstrate reliability, but only a fair ability to behave in an emotionally appropriate manner and to relate predictably in social situations. (Tr. at 311.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly consider (1) her complaints of pain; (2) the opinions of her treating physician; and (3) her impairments in combination. She also argues that the decision was not supported by substantial evidence. (Tr. at 17-22.) The Commissioner responds that the

ALJ's decision that Claimant was capable of medium work was supported by substantial evidence in all respects. (Def.'s Br. at 6-9.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 416.929(b) (2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4)(2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or

>psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>>(i) Your daily activities;
>>
>>(ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>>(iii) Precipitating and aggravating factors;
>>
>>(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>>(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>>(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>>(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3)(2004).

In this case, the ALJ cited the law above and applied it to Claimant's evidence. (Tr. at 18-21.) He summarized the objective medical findings in the records from Claimant's MRI scans; Maureen Miller, MS, ATC; Concentra; state agency medical sources; Nilima Bhirud, M.D.; and Lisa Tate, M.A., as well as Claimant's testimony at the hearing. (Tr. at 16-9.) From these, he concluded that while Claimant had severe impairments, she was not credible with respect to the degree of pain and limitation she alleged. Claimant complained that she still experienced pain on her left side, having hurt her shoulder, upper, mid and lower back while lifting a

client; however, her MRI results were normal. (Tr. at 19, 230.) The ALJ found that Claimant had no herniated nucleus pulposes, no spinal arachnoiditis, no spinal stenosis, no osteoarthritis, no degenerative disc disease, no facet arthritis, no vertebral fracture, no compromise of a nerve root, no nerve root compression, no limitation of motion of her spine, no motor loss, no atrophy with associated muscle weakness, no sensory or reflex loss and no positive straight-leg raising test. She had no pseudoclaudification, no chronic nonradicular pain, no weakness, and no resulting inability to ambulate effectively, as defined in 1.00B2b. (Tr. at 17.) There was no objective evidence substantiating the level of pain Claimant described.

There were further inconsistencies in both medical and non-medical evidence. Claimant stated that her pain was continuous unless she took medication; however, her treatment had been very conservative and had not included surgery. Claimant's current treating physician prescribed only Volporic acid for her bipolar disorder and Nexxium for her reflux; accordingly, she was taking no pain medications. (Tr. at 20, <u>citing</u> tr. at 107.) The ALJ stated that Claimant's complaints of disabling pain necessitating a TENS unit were contradicted by the objective medical evidence in Dr. Bhirud's report. Claimant testified that she had "bad nerves"; yet prior to the hearing, she had not alleged this, nor had she submitted records from treating sources pertaining to mental

15

impairments. (Tr. at 20.) Similarly, Claimant's Workers' Compensation materials contained no reference to mental impairments. (Tr. at 20, 160-247.) The ALJ found that Claimant's hearing testimony concerning her nonspecified chemical imbalance and her use of medications was inconsistent with information provided in Ms. Tate's exam. (Tr. at 20, 304-9.) Finally, Claimant testified that outplacement companies fired her, yet the record reflects that she refused to cooperate with rehabilitation placement services, who ultimately closed her case. (Tr. at 19, 248.)

The ALJ thoroughly analyzed Claimant's complaints of disabling pain and found that they lacked medical foundation. The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence in this respect.

Claimant's argument that the ALJ improperly rejected the opinions of Larry Casto, D.C. is contrary to Social Security law. The regulations provide that a chiropractor is not an "acceptable medical source" by which a Claimant can establish medically determinable impairments. Rather, such acceptable sources include licenced physicians, licensed or certified psychologists, licensed optometrists, and others specifically listed. 20 C.F.R. § 416.913(a)(2004). Chiropractors are designated as "other sources" from which evidence *may be considered*; teachers, social welfare personnel and family members are also in this category. The Fourth

Circuit has held that a chiropractor is not an "acceptable medical source" qualified to offer diagnoses or recommendations as to a Claimant's ability to work under Social Security regulations; rather, these opinions are afforded the same weight as layman's opinions. Lee v. Sullivan, 945 F.2d 687, 691 (4th Cir. 1991). Hence, although Dr. Casto treated Claimant regularly, his opinions are not weighted as those of a treating physician because he is a chiropractor rather than an acceptable medical source.

The court proposes that the presiding District Judge find that the ALJ correctly applied the law above in weighing Dr. Casto's opinions.

Claimant argues that the ALJ considered her impairments singly rather than in combination. (Tr. at 20-1.)

The Social Security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974).

The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Here, the ALJ devoted over two and one-half pages of his opinion to Claimant's proof of her impairments. (Tr. at 16-20.) When assessing her functional capacity, the ALJ stated that he was "giving the [C]laimant the benefit of some doubt about her education, *pain, psychological and other subjective factors*." (Tr. at 20, emphasis added.) He remarked that clinical psychologist Tate's evaluation "show[s] that the [C]laimant *has a combination of nonexertional psychological limitations affecting her ability to address work activity regardless of its exertional level*." (Tr. at 20, emphasis added.) The ALJ adopted these limitations, finding them consistent with Claimant's medical treatment and hearing testimony. (Tr. at 21.)

Finally, the ALJ's hypothetical question to the vocational expert incorporated Claimant's impairments in combination. He inquired of the expert:

> So a younger individual with a high school with some special education. I am going to limit this individual to, even though the evaluator didn't, I'm limiting her to 50 pounds occasionally, 25 frequently due mainly to allegations of the back and hip problems,

18

> left leg. Have you had a chance to review Exhibit 14F, which is the evaluation done by Ms. Tate along with an assessment?
>
> \*\*\*\*
>
> ...I'm going to ask her to consider the limitations in Exhibit 14F....And if you would add those to the physical limitations I gave you, Ms. Gowdy, and tell me your expert opinion...

(Tr. at 231.)

The ALJ clearly considered all of Claimant's impairments in combination. The court proposes that the presiding District Judge find that his decision was supported by substantial evidence in this respect.

Claimant makes a two-paragraph general argument that the ALJ's decision was not supported by substantial evidence. (Tr. at 21-2.) The point-by-point discussion herein demonstrates that each aspect of the ALJ's decision was supported by such evidence, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief Judge. Pursuant to the provisions

of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

   June 30, 2005                                                    Mary E. Stanley
      Date                                                    Mary E. Stanley
                                                              United States Magistrate Judge